# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**VISTA MARKETING, LLC,**

      **Plaintiff,**

**v.**                              **Case No.  8:12-cv-1640-T-30TBM**

**TERRI A. BURKETT and
JOSEPH R. PARK,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Terri A. Burkett's Motion to Exclude Expert Testimony of Larry Letourneau (Dkt. 53) and Plaintiff's Memorandum in Opposition (Dkt. 77).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiff Vista Marketing LLC ("Vista") filed this action against Defendants Terri A. Burkett and Joseph R. Park alleging violations of the Stored Communications Act ("SCA") by Terri  Burkett (Count I) and conspiracy against Terri Burkett and Park to violate the SCA (Count II).[1]

---

[1] On February 13, 2014, the Court granted Park's motion for judgment on the pleadings with respect to the conspiracy claim (Dkt. 52).  Accordingly, Count I is the only remaining claim in this action.

During the relevant time, Franklin A. Burkett, an officer and managing member of Vista, and his wife Terri Burkett were in the midst of a divorce proceeding. Terri filed for divorce in February 2010. The divorce was extremely contentious. In October 2011, during the divorce's pendency, Terri began to access Franklin's e-mails at frank@vistamktg.net after she heard that Franklin planned on closing Vista.

In May 2012, Vista became aware of Terri's access to Vista's web-mail account. On May 10, 2012, Terri was deposed in the divorce proceeding and admitted to reading and printing Franklin's e-mails. Around this same time, Terri gave her computer to her mother and stepfather. Terri's stepfather disposed of the computer's hard drive in a Publix garbage can.

Vista's position in this case, in relevant part, is that Terri's intentional access of Franklin's e-mails was unauthorized and in violation of the SCA. Vista retained Larry Letourneau to serve as its expert witness at trial in this matter to opine on the type of data that was lost when Terri's computer hard drive was destroyed. It is Letourneau's opinion that the hard drive would have retained at least some data revealing the actual dates and times of Terri's unlawful access. Terri now moves to exclude the entirety of Letourneau's expert testimony.

As an initial matter, the Court notes that Vista does not oppose the exclusion of Letourneau's expert testimony to the extent that he opined on issues of Terri's credibility and whether Terri was able to manipulate the e-mails stored in Vista's web-mail account. Thus, Terri's motion is granted to the extent that these matters shall be excluded from Letourneau's expert testimony. The remaining dispute is whether Letourneau may opine on the issues of the features and capabilities of Terri's computer and the data that was destroyed.

**STANDARD**

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702.  Under Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before permitting expert opinion testimony, the court must make certain that the expert employs "in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the field."  *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).  The court must act as gatekeeper to prevent speculative and unreliable "expert" testimony from reaching the jury.  *See Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005) (noting that the "task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*").  The gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'"  *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert,* 509 U.S. at 595).

As gatekeeper, the court makes three inquiries: (1) first, whether the expert is qualified to testify competently regarding the matters that he intends to address; (2) second, whether the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) third, whether the testimony

will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  *See City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562-63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.,* 539 F. App'x 963, 965-67 (11th Cir. 2013).  The party offering the expert opinion testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness.  *See Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)); *see also Sumner v. Biomet, Inc.,* 434 F. App'x 834, 841 (11th Cir. 2011); *Frazier,* 387 F.3d at 1260.

Importantly, although rulings on admissibility under *Daubert* inherently require the court to conduct an exacting analysis of the proffered expert's methodology, it is not the court's role to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003). Indeed, the gatekeeper role is not intended to supplant the adversary system or the role of the jury.  *See id.*  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert,* 509 U.S. at 596; *see also U.S. v. Ala. Power Co.,* 730 F.3d 1278, 1282-85 (11th Cir. 2013) (explaining that the *Daubert* inquiry "is not intended to supplant" cross-examination and presentation of contrary evidence); *Costa v. Wyeth, Inc.,* No. 8:04-cv-2599-T-27MAP, 2012 WL 1069189, at *2 (M.D. Fla. Mar. 29, 2012).

## **DISCUSSION**

### I.     Qualifications

"[I]n determining whether a proffered expert is 'qualified' to offer an opinion, courts generally look to evidence of the witness's education and experience and ask whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *Payne v. C.R. Bard, Inc.*, No. 6:11-cv-1582-Orl-37GJK, 2014 WL 988754, at *6 (M.D. Fla. Mar. 13, 2014) (quoting *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010)).

Letourneau started researching computer data recovery in 1981 and has been engaged in data recovery and forensics since that time.  He has training in a variety of applications, software, and hardware used in forensic work.  Letourneau was one of the first individuals in the United States to offer commercial services in data recovery and has done so since 1981 through his company, Data Retrieval Services.  His services include the inspection of computer hard drives and the recovery of data revealing how these computers were used, including uses associated with the Internet, e-mail, and passwords.  He has provided such services for the United States' military, NASA, the Department of Veteran Affairs, law enforcement agencies, and private companies.  Letourneau estimates that he has been involved in the recovery of computer data from 2,000 hard drives since 1981.

Based on these qualifications, the Court concludes that Letourneau is qualified to discuss the features of Terri's computer, what is typically located on a hard drive, including stored data, such as e-mails, and how the destruction of a computer's hard drive can limit or destroy the recovery of the data contained therein.

## II.     Reliability

The focus of Letourneau's opinion relates to what can normally be gathered and analyzed from a computer's hard drive and what would have been on Terri's hard drive, had it not been destroyed.  Letourneau's report lists information that would have been included on the hard drive, including the actual dates and times Terri accessed Vista's web-mail account.   According to Letourneau's affidavit, his opinion regarding what would have remained on Terri's computer was derived from his analysis of the specifications of Terri's computer and his review of Terri's testimony and other discovery related to how she used the computer, including her use of the computer to access Vista's web-mail account.

Based on Letourneau's extensive experience in computer forensics, combined with his analysis of Terri's computer and her testimony and other discovery regarding the nature of her use of Vista's web-mail account, the Court concludes that Letourneau's opinion on what would have been recovered on the hard drive had it not been destroyed is sufficiently reliable.  Of course, Terri can challenge this testimony on cross-examination.

## III.    Helpfulness

Terri contends that the facts related to the destruction of the computer hard drive and what would have remained on the hard drive are not relevant to any issues in this case.  The Court disagrees.  As Vista points out, the fact that the hard drive was unavailable for review is relevant to damages because damages under the SCA include punitive damages and a statutory minimum of $1,000 for each violation of Vista's web-mail account.  In other words, the destruction of the hard drive eliminated the best evidence of the exact dates and times Terri accessed the web-mail account.  The facts surrounding the destruction of the hard drive

also relate to punitive damages. *See* 18 U.S.C. § 2707(c) ("If the violation is willful or intentional, the court may assess punitive damages.").

Finally, the nature and details of the type of data retained on a computer hard drive are not necessarily within the immediate understanding of an average person. Letourneau's testimony on this issue is helpful to the jury's general understanding of how a computer's hard drive stores and retains data and usage history.

It is therefore **ORDERED AND ADJUDGED** that Defendant Terri A. Burkett's Motion to Exclude Expert Testimony of Larry Letourneau (Dkt. 53) is granted in part and denied in part for the reasons stated herein.

**DONE** and **ORDERED** in Tampa, Florida on March 26, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-1640.mtexcludeexpert-Daubert.wpd